IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROSE LEE URRUTIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-2421-D |
| VS. | § | |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION</u>

Plaintiff Rose Lee Urrutia ("Urrutia") brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI of the Act.  For the reasons that follow, the court affirms in part and vacates and remands in part the Commissioner's decision.

I

Urrutia filed an application for SSI under Title XIV of the Act on June 26, 2012, alleging a disability beginning May 15, 2010.  The Commissioner denied Urrutia's claim initially and on reconsideration.  Following a hearing, the administrative law judge ("ALJ") found that Urrutia is "not disabled."  The Appeals Council denied Urrutia's request for review, and the ALJ's decision became the final decision of the Commissioner.

In making her decision, the ALJ followed the five-step sequential process prescribed in 20 C.F.R. § 416.920(a).  At step one, she found that Urrutia has not engaged in substantial

gainful activity since June 22, 2012, the application date.[1]  At step two, the ALJ found that Urrutia has severe impairments of progressive arthritis in her knees, hips, and back; radiculopathy involving her bilateral lower extremities; facet joint hypertrophy; depressive disorder; lumbosacral neuritis; and postlaminectomy syndrome.  At step three, the ALJ found that Urrutia's impairments failed to meet or equal a listed impairment for presumptive disability under 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ found that Urrutia has the residual functional capacity ("RFC")

> to perform and sustain sedentary work as defined in 20 CFR 416.967(a) with lifting and carrying 10 pounds occasionally and less than 10 pounds frequently.  She can stand and or walk two hours total in an eight-hour workday with the use of a cane, and sit six hours total in an eight-hour workday.  She can occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl, and can never climb ropes, ladders or scaffolds.  She must avoid hazardous conditions such as dangerous moving machinery and unprotected heights, and cannot perform commercial driving.  From a mental standpoint, she can understand, remember and carry[]out very short and simple instruction[s] and perform simple tasks.

R. 36.  At step four, the ALJ found that Urrutia has no past relevant work.  At step five, where the burden shifted to the Commissioner, the ALJ found based on the vocational expert's ("VE's") testimony that Urrutia is capable of performing jobs existing in significant numbers in the national economy, such as telephone quotation clerk, charge account clerk, and call out operator.  Accordingly, the ALJ found that Urrutia has not been under a

---

[1]Although the ALJ refers to an application date of June 22, 2012, the record reflects that Urrutia applied for SSI on June 26, 2012.  *See* R. 132.

disability at any time between June 22, 2012 (the application date) and June 27, 2014 (the date of the ALJ's decision).

Urrutia maintains on three grounds that the Commissioner's decision must be reversed: first, the ALJ failed to properly weigh the medical opinion evidence and failed to properly determine Urrutia's RFC; second, the ALJ failed to properly evaluate Urrutia's credibility; and, third, the ALJ relied on flawed VE testimony.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*,

- 3 -

38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether an applicant is disabled, the Commissioner follows a five-step sequential analysis. *See, e.g., Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the Commissioner finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id*. Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or

- 4 -

equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *See, e.g., Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id*. Reversal of the Commissioner's decision is appropriate, however, "only if the applicant shows that [she] was prejudiced." *Id*. The

- 5 -

court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced.  *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Urrutia maintains that the ALJ failed to properly weigh the medical opinion evidence of her treating physician, David Schickner, M.D. ("Dr. Schickner"), and failed to properly determine Urrutia's RFC.

A

The court begins with Urrutia's argument that the ALJ failed to properly weigh the medical opinion of Dr. Schickner.  The ALJ found that Urrutia has the RFC to perform sedentary work as defined in 20 C.F.R. 416.967(a).  In making this finding, the ALJ rejected Dr. Schickner's opinion, in an August 2013 "Lumbar Spine Impairment Questionnaire" ("LSIQ"), that Urrutia has disabling symptoms and functional limitations.[2]

_____

[2]As the ALJ noted in her decision, Dr. Schickner concluded in the LSIQ that, as a result of Urrutia's lumbar stenosis, she

> could sit one hour, stand or walk one hour, and needed [the] option to move around every one or two hours for about 10 minutes.  She could occasionally lift and carry five pounds.  She . . . experienced pain that would frequently interfere with her attention and concentration.  Her symptoms were expected to last for 12 months, and she had emotional factors that contributed to her functional limitations.  Dr. Schickner further opined that [Urrutia] was . . . capable of low stress work, would need 10 to 15 minute unscheduled breaks every one or two hours during an eight-hour workday.  [Urrutia] would be expected to have good and bad days and expected absenteeism

According to the ALJ, Dr. Schickner

> apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Urrutia] and seemed to uncritically accept as true most, if not all, of what [Urrutia] reported.  Yet, the medical records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if [Urrutia] was in fact disabled.  [Dr. Schickner's] opinion is accorded little weight as it is without substantial support from the evidence of record, which obviously renders it less persuasive.

R. 37.

Urrutia maintains that the ALJ's conclusory finding that Dr. Schickner's opinions were based on Urrutia's statements rather than on medical abnormalities is directly contradicted by the record.  She also posits that the ALJ failed to identify any evidence contradicting Dr. Schickner's opinions, and that Dr. Schickner's opinions should therefore be given controlling weight.  Finally, Urrutia contends that even if Dr. Schickner's opinions were not entitled to controlling weight, the ALJ should have considered the factors of 20 C.F.R. §§ 404.1527 and 416.927 in determining how much deference to give Dr. Schickner's opinions, and her failure to do so was not harmless error because all of the factors weighed in favor of crediting Dr. Schickner's opinions.

The Commissioner responds that substantial evidence supports the ALJ's decision to

---

> (from work) of more than three times per month.  She had described symptoms and limitations since August 2012, and needed to avoid temperature extremes, humidity, heights, pushing, pulling, kneeling, bending, and stooping.

R. 33.

give Dr. Schickner's opinion little weight.  She cites examples from Dr. Schickner's treatment notes from August, September, and November 2012, and June 2013 that she contends do not support the restrictions Dr. Schickner identified in the LSIQ.  The Commissioner also argues that the ALJ *did* weigh Dr. Schickner's opinion using the applicable factors in 20 C.F.R. § 416.927(c)—which require only that the ALJ "apply" the factors and articulate good reasons for the weight assigned to a treating source opinion—by noting that Dr. Schickner was Urrutia's treating physician and concluding that his treatment notes did not support his medical source statement.  The Commissioner contends that the ALJ may reject a physician's conclusory opinion of disability without referring to the factors used to evaluate a typical medical opinion because a physician's conclusory opinion of disability intrudes upon an area reserved to the Commissioner.[3]

## B

Generally, controlling weight is assigned to the opinions of a treating physician if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

---

[3]Although the Commissioner correctly states the applicable law, she incorrectly contends that Dr. Schickner's medical opinions in the LSIQ were conclusory opinions of disability that intruded upon an area reserved to the Commissioner.

not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). "The ALJ may give little or no weight to a treating source's opinion, however, if good cause is shown." *Ranes v. Astrue*, 2009 WL 2486037, at *9 (N.D. Tex. Aug. 14, 2009) (Fitzwater, C.J.) (citing *Newton*, 209 F.3d at 455-56). "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456 (citations omitted).

As a procedural matter, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[(c)]." *Id.* at 453. Under 20 C.F.R. §§ 404.1527 and 416.927, the ALJ must evaluate the following factors before giving less than controlling weight to a treating source's opinions: (1) whether there was an examining relationship; (2) the treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) the support of the source's opinion afforded by the medical evidence of record; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) other factors that "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); *see also Zapata v. Colvin*, 2014 WL 4354243, at *8 (N.D. Tex. Aug. 13, 2014) (Cureton, J.) (setting forth six-factor test), *rec. adopted*, 2014 WL 4354243 (N.D. Tex.

Sept. 2, 2014) (Means, J.).

C

The ALJ had good cause to discount Dr. Schickner's opinions contained in the LSIQ, and she gave sufficient reasons to support her decision.

Dr. Schickner opined in the LSIQ that Urrutia's physical impairments were so disabling as to prevent her from standing, walking, or sitting for more than one hour in total in an eight-hour work day. He also opined that Urrutia would be unable to lift more than five pounds and would be expected to be absent from work more than three times per month. But other treatment records, including Dr. Schickner's own treatment notes, indicate that Urrutia had no musculoskeletal deformity and no instability of joints in her knees, shoulders, or elbows; that her muscle tone, cranial nerves, and coordination were normal and intact; that her spinal canal, foramina, and neuroforamina were preserved and she had no disc herniation; that her symptoms were tolerable with medication; that her activities were only "moderately limit[ed]," R. 263; that her condition did not interfere with her ability to keep her neck in a constant position, such as when looking at a computer screen or looking down at a desk[4]; that after hospitalization for "[e]xacerbation of lumbar pain post epidural steroid injection," Urrutia returned to a more normal level of function, had "excellent pain relief with oral medications," and ambulated in the wards, *id.* at 287; and that she tolerated her August 12, 2013 lumbar laminectomy well and made progressive improvement overall with improved

---

[4]Dr. Schickner also noted in the LSIQ, without explanation, that Urrutia could not do a full time competitive job that required such activity on a sustained basis.

motor, sensation, and ambulation. Discharge notes after her epidural injections and lumbar laminectomy reflected that Urrutia was restricted to lifting no more than 10 pounds and not driving, but they did not otherwise limit her activities. And Urrutia's hearing testimony showed that she performed personal care, prepared food, made her bed, and walked for exercise, suggesting that she is capable of standing, walking, or sitting for more than one hour total in an eight-hour work day. Because there was contrary record evidence, and the ALJ had adequate grounds to find that Dr. Schickner's opinion in this respect was "without substantial support," the ALJ was not obligated to give controlling weight or even special deference to Dr. Schickner's opinions in the LSIQ. *See, e.g., Johnson v. Colvin*, 2015 WL 3513209, at *9 (N.D. Tex. June 4, 2015) (Fitzwater, J.) (concluding that the ALJ had adequate grounds to reject the treating physician's opinion that plaintiff's physical impairments were so disabling as to prevent her from standing, walking, or sitting for more than one hour in total in an eight-hour work day where other medical evidence and plaintiff's own testimony indicated plaintiff was capable of standing, walking, or sitting for more than one hour total in an eight-hour work day).

D

Urrutia argues that the ALJ erred in failing to specifically consider the factors provided in 20 C.F.R. §§ 404.1527 and 416.927 in determining the weight to be given to Dr. Schickner's opinions. Assuming *arguendo* that the ALJ was required to consider these factors when analyzing Dr. Schickner's opinions, the court concludes that the ALJ properly evaluated Dr. Schickner's opinions.

"In considering whether the ALJ conducted a sufficient six-factor analysis, the court initially observes that an ALJ is not required to recite or discuss each factor in a sequential or formulaic fashion." *Ranes*, 2009 WL 2486037, at \*11 (citing *Wiltz v. Comm'r of Soc. Sec. Admin.*, 412 F.Supp.2d 601, 608 (E.D. Tex. 2005) ("[T]he adjudicator [need only] 'consider' the factors. Neither the regulation nor interpretive case law requires that an ALJ specifically name, enumerate, and discuss each factor in outline or other rigid, mechanical form.")). Evaluating the entirety of the ALJ's analysis, and focusing on its substance rather than its form, the court concludes that the ALJ engaged in a sufficiently detailed analysis that encompassed the six factors, and that the ALJ had good cause to discount Dr. Schickner's opinions.

It is clear that the ALJ was aware of her obligations when analyzing the opinions of a treating physician because she stated that she "considered opinion evidence in accordance with the requirements of 20 CFR 416.927." R. 36. As to factors one and two—under which the ALJ evaluated the examining and treatment relationship between Urrutia and Dr. Schickner—the ALJ acknowledged that Dr. Schickner was Urrutia's treating physician, and the ALJ detailed various instances from August 13, 2012 through October 31, 2013 when Dr. Schickner examined Urrutia.

As to factors three, four, and six—under which the ALJ evaluates the supportability and consistency of the physician's opinion as well as any other factors that "tend to support or contradict the opinion"—the ALJ explained that she was according Dr. Schickner's opinion in the LSIQ "little weight" because (1) he relied heavily on Urrutia's subjective

report of symptoms and limitations, and he seemed to accept as true most of what Urrutia reported; (2) "the medical records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant was in fact disabled"; and (3) Dr. Schickner's opinion was without substantial support from the evidence of record, which rendered it less persuasive. *Id.* at 37. As to factor five, it is clear that the ALJ knew that Dr. Schickner was treating Urrutia for her lumbar spinal stenosis and that he prescribed lumbar epidural steroid injections and performed a lumbar laminectomy.

As the court has already explained, an ALJ for good cause can reject the opinions of a treating physician. In this case, the ALJ explained that she was not accepting Dr. Schickner's opinions contained in the LSIQ because he seemed to rely heavily on the subjective report of symptoms and limitations that Urrutia had provided; he seemed to uncritically accept as true most of what she reported; the medical records failed to reveal the type of significant clinical and laboratory abnormalities one would expect if Urrutia were in fact disabled; and Dr. Schickner's opinion was without substantial support from the evidence of record. The ALJ properly considered the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c), and factors three, four, and six provided good cause for the ALJ to discount Dr. Schickner's opinions contained in the LSIQ regarding Urrutia's limitations.

E

The court now turns to Urrutia's contention that the ALJ failed to properly determine her RFC.

1

Urrutia posits that the ALJ failed to provide a sufficient explanation for her RFC finding that Urrutia can perform sedentary work.  She contends that although the ALJ vaguely concluded that she could perform sedentary work based on "all the evidence of record," R. 37, this statement cannot be true given that the ALJ rejected Dr. Schickner's opinions, the other medical opinions in the record, and Urrutia's own testimony.  Urrutia argues that the ALJ's failure to provide any further explanation for her finding that Urrutia can perform sedentary work, and her failure to include a narrative of any specific medical or non-medical facts that support the RFC determination for Urrutia, constitute reversible error.

The Commissioner responds that the ALJ did discuss Urrutia's medical evidence in detail (although not under the heading of RFC), and even rejected the opinions of state agency physicians that Urrutia could perform the full range of medium work because the medical evidence supported more restrictive limitations.  The Commissioner maintains that the ALJ's RFC determination is consistent with the evidence of record and constitutes an appropriate resolution of any conflicts in the evidence, and that substantial evidence supports the ALJ's RFC finding.

2

The ALJ found that Urrutia has the RFC

> to perform and sustain sedentary work as defined in 20 CFR
> 416.967(a) with lifting and carrying 10 pounds occasionally and
> less than 10 pounds frequently.  She can stand and or walk two
> hours total in an eight-hour workday with the use of a cane, and
> sit six hours total in an eight-hour workday.  She can
> occasionally climb ramps or stairs, balance, stoop, kneel, crouch
> or crawl, and can never climb ropes, ladders or scaffolds.  She
> must avoid hazardous conditions such as dangerous moving
> machinery and unprotected heights, and cannot perform
> commercial driving.  From a mental standpoint, she can
> understand, remember and carry[]out very short and simple
> instruction[s] and perform simple tasks.

*Id.* at 36.  As the court has already explained, in determining Urrutia's RFC, the ALJ

afforded little weight to the medical opinions of Dr. Schickner.  *Id.* at 37.  The ALJ also

afforded little weight to the state agency medical consultant who determined that Urrutia was

capable of performing the full range of medium work, concluding that "the medical evidence

support[ed] a finding that [Urrutia] [was] more limited than determined by the State agency

consultants."  *Id.* at 37.

The ALJ erred in making the RFC determination after rejecting the only medical

opinions in the record that addressed the effect of Urrutia's condition on her ability to work.

"While the ALJ may choose to reject [medical] opinions, [she] cannot then independently

decide the effects of Plaintiff's . . . impairments on her ability to work, as that is expressly

prohibited by *Ripley*."  *Shugart v. Astrue*, 2013 WL 991252, at *5 (N.D. Tex. Mar. 13, 2013)

(Toliver, J.) (citing *Ripley*, 67 F.3d at 557-58).[5]  Instead, the ALJ must at that point obtain

an expert medical opinion regarding the types of work tasks that the claimant can perform

given her impairments.  *Thornhill v. Colvin*, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15,

2014) (Horan, J.) (citing *Ripley*, 67 F.3d at 557), *rec. adopted*, 2015 WL 232844 (N.D. Tex.

Jan. 16, 2015) (Lynn, J.).

In this case, after declining to rely on any of the medical opinions addressing the

effects of Urrutia's physical impairments on her ability to work, the ALJ improperly made

an independent RFC finding.  *See id.*; *see also Williams v. Astrue*, 355 Fed. Appx. 828, 832

n.6 (5th Cir. 2009) (per curiam) ("In *Ripley*, we held that an ALJ may not—without opinions

from medical experts—derive the applicant's [RFC] based solely on the evidence of [the

---

[5]In *Ripley* the Fifth Circuit explained:

> [the] ALJ is responsible for determining an applicant's [RFC].
> After considering the evidence, however, we conclude that the
> ALJ's determination . . . was not supported by substantial
> evidence.  The record includes a vast amount of medical
> evidence establishing that Ripley has a problem with his back.
> What the record does not clearly establish is the effect Ripley's
> condition had on his ability to work . . . The Commissioner
> argues that the medical evidence substantially supports the
> ALJ's conclusion.  In making this argument, the Commissioner
> points to reports discussing the extent of Ripley's injuries.
> Without reports from qualified medical experts, however, we
> cannot agree that the evidence substantially supports the
> conclusion that Ripley was not disabled because we are unable
> to determine the effects of Ripley's conditions . . . on his ability
> to perform sedentary work.

*Ripley*, 67 F.3d at 557-58 & n.27.

applicant's] claimed medical conditions.  Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions.").  Because the ALJ erred by making an RFC determination without medical evidence addressing the effects of Urrutia's impairments on her ability to work, the ALJ's decision is not supported by substantial evidence.

3

The existence of this error does not automatically result in reversal of the Commissioner's decision.  "Procedural perfection in administrative proceedings is not required," and a court "will not vacate a judgment unless the substantial rights of a party have been affected."  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam).  When an ALJ commits a *Ripley* error, remand "is appropriate only if [plaintiff] shows that [she] was prejudiced."  *Ripley*, 67 F.3d at 557.  "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."  *Id*. at n.22.

In this case, the evidence before the ALJ showed that Urrutia suffered from lumbar spinal stenosis that, at least in some respects, affected her ability to perform sedentary work.  Given this evidence, the ALJ could have reached a different disability determination had she fully developed the record and obtained an expert medical opinion regarding the effects that Urrutia's back condition had on her ability to work.  Accordingly, the ALJ's failure to obtain medical opinion evidence regarding the effects of Urrutia's back pain, along with her other impairments, prejudiced Urrutia and warrants vacating and remanding the Commissioner's

decision.  *See, e.g., Thornhill*, 2015 WL 232844, at *11; *see also Johns v. Colvin*, 2015 WL 1428535, at *20 (N.D. Tex. Mar. 30, 2015) (Ramirez, J.).

Although a remand is warranted on this ground alone, the court will turn to Urrutia's remaining grounds for purposes of guiding the proceedings on remand.

IV

Urrutia contends that the ALJ failed to properly evaluate her credibility when the ALJ found that her allegations of complete inability to work were not supported by the record.

A

In determining Urrutia's RFC, the ALJ found that "the claimant's allegations of being totally precluded from work-related activities are not fully credible, to the extent alleged." R. 37.  According to the ALJ:

> [Urrutia] testified that her daily activities were limited, but not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  She indicated that she performed personal care, prepared food, made her bed, and walked for exercise.  A review of [Urrutia's] work history shows that [she] worked only sporadically prior to the alleged disability onset date, and had no work at the substantial gainful activity level, which raises a question as to whether [her] continuing unemployment is actually due to medical impairments.

*Id.*  Urrutia challenges the ALJ's credibility finding, arguing that the ALJ failed to articulate credible and plausible reasons for rejecting her subjective complaints.  Urrutia posits that her activities of daily living, on which the ALJ relied, are inconsistent with the ability to withstand the physical demands of full-time work on a sustained basis, and that her inconsistent work history does not automatically equate to a finding that her allegations of

disability are not credible.  Urrutia contends that she gave detailed testimony on her symptoms and resulting limitations, her limited activities, and her lack of response to treatment, and that the ALJ's failure to adequately address these factors requires a remand.

The Commissioner responds that the ALJ conducted a full and proper analysis of Urrutia's credibility.  She contends that it was appropriate for the ALJ to consider Urrutia's daily activities when deciding her disability status.  The Commissioner also maintains that the record contains substantial evidence supporting the ALJ's assessment that Urrutia's daily activities belie her inability to work, and although a sporadic work history does not automatically equate to a conclusion that Urrutia's allegations of disability are not credible, Urrutia's sporadic work history is relevant to the ALJ's credibility analysis and may undermine Urrutia's credibility.

B

Urrutia does not dispute that the ALJ followed the correct two-step process in making the credibility determination.[6]  That process, outlined in Social Security Ruling 96-7p,

_____

[6]Urrutia contends that, at the second step, the ALJ must complete a seven-factor analysis in determining the credibility of subjective complaints.  Although both Social Security Ruling 96-7p and 20 C.F.R § 416.929(c)(3) prescribe a seven-factor analysis for an ALJ to apply when assessing the credibility of a claimant's subjective allegations of pain or fatigue, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F.Supp.2d 863, 871 (E.D. Tex. 2005) (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)).  Here, it is clear that the ALJ considered the regulatory factors, which include:

(1) Your daily activities; (2) The location, duration, frequency,

provides, in pertinent part:

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Morton v. Astrue*, 2011 WL 2455566, at *9 (N.D. Tex. June 20, 2011) (Fitzwater, C.J.) (citation omitted); *see also Salgado v. Astrue*, 271 Fed. Appx. 456, 458-59 (5th Cir. 2008) (per curiam).  In general, an ALJ's findings regarding the credibility of subjective symptom testimony are entitled to considerable judicial deference.  *See Beck v. Barnhart*, 205 Fed. Appx. 207, 213 (5th Cir. 2006) (per curiam); *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Patton*, 697 F.2d at 592.  "Substantial evidence simply needs to be more than a mere scintilla.  Not only is it less than a preponderance, the evidence can preponderate in the claimant's favor and the ALJ's decision [can] still be supported by substantial evidence." *Morton*, 2011 WL 2455566, at *10.

---

and intensity of your pain or other symptoms; (3) Precipitating and aggravating factors; (4) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (6) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

In this case, the ALJ reached the conclusion that Urrutia challenges after discussing the evidence in the record and explaining how she evaluated the evidence in making her RFC assessment. The ALJ considered Urrutia's testimony about her symptoms and daily activities, objective evidence in the form of numerous medical records taken over an extended period, and evidence of Urrutia's work history, including her work history before the alleged disability onset date. The ALJ acknowledged Urrutia's allegation that her daily activities were limited, but she concluded that the evidence of record did not support the extent of Urrutia's alleged disabling symptoms and limitations. This is not a case where the ALJ selectively discussed only the evidence that supported her ultimate conclusion. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("[T]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."). The ALJ found that Urrutia's testimony regarding the severity of her symptoms was not credible because she indicated that she performed personal care, prepared food, made her bed, and walked for exercise, and a review of her work history showed that she worked only sporadically before the alleged disability onset date, and had no work at the substantial gainful activity level, raising a question as to whether her continued unemployment is actually due to medical impairments.

The ALJ did not err in assessing Urrutia's credibility.

V

Finally, Urrutia posits that the ALJ relied on flawed VE testimony because the hypothetical she posed to the VE failed to accurately describe Urrutia's moderate restrictions

in concentration, persistence, or pace.

### A

> Unless the hypothetical question posed to the [VE] by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical questions . . . a determination of non-disability based on such a defective question cannot stand.

*Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (quoting *Bowling*, 36 F.3d at 436). The ALJ posed a hypothetical to the VE that did not explicitly refer to Urrutia's moderate restrictions in concentration, persistence, or pace. Instead, the ALJ asked the VE whether jobs existed for a hypothetical individual who, *inter alia*, had "the ability to understand, remember, and carry out simple instructions and perform simple tasks." R. 62. In response, the VE opined that such a person could work as a "telephone quotation clerk," "charge account clerk," and "call out operator." *Id.* at 63.

Urrutia maintains that the ALJ's decision is fatally flawed because it is based on the VE's response to a defective hypothetical that did not incorporate as limitations the moderate restrictions found in Urrutia's concentration, persistence, or pace. She contends that although the Fifth Circuit has not addressed this issue, multiple circuits and this court have found reversible error when the ALJ's hypothetical to the VE does not specifically incorporate limitations found under the four broad functional areas considered under 20 C.F.R. § 416.920a, which includes limitations in concentration, persistence, or pace.

The Commissioner responds that the "paragraph B" criteria limitations of having mild and moderate deficiencies are not an RFC assessment but are instead used to rate the severity of mental impairments at steps two and three of the sequential evaluation process.  She argues that this court has repeatedly held that an ALJ does not err by not including in the RFC the specific words "moderate restriction in the area of concentration, persistence, or pace," where the decision shows that the ALJ considered these limitations in reaching the RFC determination.  Thus the Commissioner argues that the ALJ properly incorporated Urrutia's moderate mental limitations in her RFC assessment and that Urrutia's claim of error lacks merit.

B

Urrutia has failed to demonstrate reversible error.  The ALJ was only obligated to reasonably incorporate in her hypothetical all of Urrutia's disabilities that the ALJ recognized.  *See Boyd*, 239 F.3d at 707.  In her RFC determination, the ALJ found, *inter alia*, that Urrutia can understand, remember, and carry out very short and simple instructions and perform simple tasks.  If the ALJ considered the moderate restrictions in Urrutia's concentration, persistence, or pace when determining the RFC, and this RFC finding is supported by substantial evidence, it was not necessary for the ALJ to directly include in her hypothetical a limitation on concentration, persistence, or pace.  *Herring v. Astrue*, 788 F.Supp.2d 513, 518 (N.D. Tex. 2011) (Fitzwater, C.J.); *see also Bordelon v. Astrue*, 281 Fed. Appx. 418, 423 (5th Cir. 2008) (per curiam) (holding that where ALJ's hypothetical to VE assumed individual who, *inter alia*, would need a job with only rare public interaction, low

- 23 -

stress, and simple one- to two-step instructions, "ALJ reasonably incorporated [complainant's] moderate concentration, persistence, and pace limitations such that the hypothetical question was proper."); *Smith v. Colvin*, 2014 WL 1407437, at *5 (N.D. Tex. Mar. 24, 2014) (Horan, J.) ("The record reflects that the ALJ considered the limitations in concentration, persistence, or pace when determining Plaintiff's RFC and that this RFC finding is supported by substantial evidence. The ALJ was not required to expressly include a limitation for concentration, persistence, or pace in her hypothetical to the VE."), *rec. adopted*, 2014 WL 1407440 (N.D. Tex. Apr. 11, 2014) (Godbey, J.) .

In evaluating Urrutia's mental impairments, the ALJ considered whether the "paragraph B" criteria of 20 C.F.R. § 416.920a had been satisfied.[7]  She relied on the

---

[7]In addition to the severity standard that is used to evaluate all impairments, the ALJ must follow an even more precise standard when evaluating the severity of a claimant's mental impairments. *See* 20 C.F.R. § 416.920a. This evaluation process is often referred to as the "special technique" or the "technique." *See, e.g., Randall v. Astrue*, 570 F.3d 651, 658 (5th Cir. 2009) (per curiam) (citing 20 C.F.R. § 404.1520a). The special technique requires that the ALJ first consider whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 416.920a(b)(1). Once the ALJ finds that a claimant has a mental impairment, she must rate the degree of functional limitation resulting from the impairment pursuant to the categories identified in paragraphs A, B, and sometimes C, of the adult mental disorders listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 416.920a(b)(2), (c). Paragraph B contains four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. 20 C.F.R. § 416.920a(b)(2), (c)(3); 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00C. The first three functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4). The fourth functional area is rated on a four-point scale ranging from "none" to "four or more" episodes. *Id.* After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 416.920a(d). If the degree of limitation in each of the first three areas is "none" or "mild," and the degree of limitation in the fourth area is "none," "the ALJ must find the impairment

following evidence: a September 6, 2013 evaluation by Ronald W. Merrill, M.D. ("Dr. Merrill"), in which Dr. Merrill assessed depressive disorder (not elsewhere classified) and physiological malfunction arising from mental factors, and prescribed medications; a December 20, 2013 follow-up appointment with Dr. Merrill during which she reported doing much better emotionally, and that about two weeks after starting medication, things settled down and she no longer had the sensation of things crawling on her, slept well, and her appetite had been stable; and Urrutia's testimony that she had a nervous breakdown in November 2013 due to having to depend on others to take care of her, but that her depression had gotten better with prescribed medications.

Based on this evidence, the ALJ concluded that Urrutia had "moderate" difficulties with regard to concentration, persistence or pace.  She explained that

> [Urrutia] has a diagnosis of depressive disorder (not elsewhere classified) and physiological malfunction arising from mental factors.  She reported stress and her family felt that her symptoms were stress related.  She indicated that after two weeks of treatment, her symptoms improved, and she did much better emotionally.  Her prescribed medications continue[.]

R. 35.  The ALJ also stated and acknowledged that limitations identified in the "paragraph B" criteria are not an RFC assessment but are used to rate the severity of mental impairments

_____

'not severe,' which generally concludes the analysis and terminates the proceedings." *Boyd*, 239 F.3d at 705 (citing to 20 C.F.R. § 404.1520a[(d)](1)).  If the mental impairment is "severe," the ALJ must then determine if the impairment meets or equals a listed mental disorder under 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 416.920a(d)(2).  If the impairment is severe, but does not reach the level of a listed disorder, then the ALJ must conduct an RFC assessment.  20 C.F.R. § 416.920a(d)(3).

at steps 2 and 3 of the sequential evaluation process, and that the mental RFC assessment used at steps 4 and 5 requires a more detailed assessment of functions contained in the broad categories found in "paragraph B." The ALJ stated that the RFC "reflects the degree of limitation the [ALJ] has found in the 'paragraph B' mental function analysis." *Id.* at. 36. The ALJ's decision shows that she considered the limitation of moderate difficulty with regard to concentration, persistence, and pace, and included it in Urrutia's RFC, by limiting her to understanding, remembering, and carrying out "very short and simple instruction[s] and perform[ing] simple tasks." *Id.* Stated differently, the ALJ found that *even with* a moderate restriction in the area of concentration, persistence, or pace, Urrutia was not prevented from understanding, remembering, and carrying out very short and simple instructions and performing simple tasks. *See, e.g., Downing v. Astrue*, 2012 WL 4354928, at *5 (N.D. Tex. Sept. 7, 2012) (Averitte, J.) (ALJ incorporated "moderate difficulties in concentration, persistence or pace" by limiting claimant to "simple tasks" in RFC determination), *rec. adopted*, 2012 WL 4354915 (N.D. Tex. Sept. 24, 2012) (Robinson, J.); *Gonzalez v. Comm'r of Soc. Sec. Admin.*, 2012 WL 1058114 at *7 (N.D. Tex. Jan. 26, 2012) (Stickney, J.) (the ALJ considered the "paragraph B" limitation of moderate difficulty with regard to concentration, persistence, and pace, and included this functional limitation in the RFC assessment by limiting plaintiff to short and simple tasks and instructions), *rec. adopted*, 2012 WL 1065459 (N.D. Tex. Mar. 29, 2012) (O'Connor, J.).

The ALJ's hypothetical to the VE tracked each limitation that she found. *Compare* R. 62 (ALJ asking VE whether jobs existed for hypothetical individual with plaintiff's RFC,

which included "having the ability to understand, remember, and carry out simple instructions and perform simple tasks.") *with id.* at 36 (Urrutia's RFC, which stated, "[f]rom a mental standpoint, she can understand, remember and carry[ ]out very short and simple instruction[s] and perform simple tasks."). Therefore, the ALJ did not commit reversible error. In her assessment of the RFC, she sufficiently accounted for Urrutia's moderate restrictions in concentration, persistence, or pace by recognizing her moderate restrictions in concentration, persistence, or pace in her analysis before ultimately determining that these limitations were sufficiently moderate for Urrutia to be able to remember and carry out short and simple instruction and perform simple tasks.

And even if the ALJ erred in failing to include one or more limitations in the hypothetical she posed to the VE, this error would be harmless. An ALJ's failure to incorporate all of a claimant's recognized disabilities into a hypothetical question is not reversible error where the claimant's representative is afforded the opportunity to correct deficiencies in the question by mentioning or suggesting to the VE any purported defects in the hypothetical question, "including additional disabilities not recognized by the [ALJ]'s findings and disabilities recognized but omitted from the question." *Wise v. Barnhart*, 101 Fed. Appx. 950, 951 (5th Cir. 2004) (per curiam) (quoting *Bowling*, 36 F.3d at 436); *see also, e.g., Gardner v. Massanari*, 264 F.3d 1140, 2001 WL 822457, at *2 (5th Cir. June 18, 2001) (per curiam) ("[Plaintiff] does not dispute that his non-attorney representative was allowed to cross-examine the VE regarding the ALJ's hypothetical question. Thus, even assuming, *arguendo*, that the ALJ's hypothetical question was deficient in the respects urged on appeal,

affording [the claimant's] representative an opportunity to correct any perceived deficiencies precludes a finding of reversible error."). Urrutia's attorney was afforded an opportunity at the hearing to cross-examine the VE and to correct deficiencies in the ALJ's hypothetical question by mentioning or suggesting to the expert any purported defects in the question. Accordingly, any deficiency in the ALJ's hypothetical to the VE was not reversible error. *See, e.g., Harrison v. Colvin*, 2014 WL 982843, at *5 (N.D. Tex. Mar. 12, 2014) (Fitzwater, C.J.) (holding that any error in failing to include recognized limitation in ALJ's hypothetical question to VE was not reversible error where plaintiff's attorney was afforded opportunity to correct deficiencies in hypothetical by mentioning or suggesting purported defects in the question); *Browning*, 2013 WL 6242087, at *6 (same).

\*   \*   \*

The ALJ did not err in assessing Urrutia's credibility or in relying on VE testimony based on a hypothetical that did not specifically include "moderate restrictions in concentration, persistence or pace." In these respects, the Commissioner's decision is affirmed. But the ALJ did commit reversible error in formulating an RFC determination without medical evidence addressing the effects of Urrutia's impairments on her ability to work. Because consideration of this evidence could change the outcome in this case, the court vacates the Commissioner's decision in part and remands this matter for further proceedings consistent with this memorandum opinion.

- 28 -

Accordingly, the Commissioner's decision is AFFIRMED in part and VACATED and REMANDED in part for further proceedings consistent with this memorandum opinion.

March 24, 2016.


_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE